**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHIRLEY EMORY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 4300** |
| | ) | |
| MENARD, INC., d/b/a/ MENARDS, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In December 2023, Shirley Emory entered a retail store operated by Menard, Inc. (commonly known as Menards). While stepping onto a rug just inside the entrance, she fell on her face and sustained injuries. Emory filed suit against Menards, and Menards has moved for summary judgement. For the reasons stated below, the Court grants the motion.

## Background

Menards is a home improvement retailer that operates a store at 2300 Randall Road, Carpentersville, Illinois (Carpentersville Menards).

Shirley Emory is eighty-three years old. She was a regular customer at the Carpentersville Menards. She entered the store on December 30, 2023. On the white tile floor just inside the front entrance, there was a black rug or mat with rubber edges. This rug was used during inclement weather to absorb moisture tracked into the store. The edge of the rug farthest from the door overlapped with a walk-off grate. Some shopping carts were located at the edge of the metal grate farthest from the door. The

entrance is visible on the bottom right in this still taken from video surveillance footage:

On the morning of December 30, 2023, the entrance rug contained two buckles or wrinkles on its right side, running roughly parallel to the sliding doors. These ripples are visible in the still image above. It is not clear whether these ripples extended to the center of the mat, where most customers stepped as they entered.

Ten minutes before Emory entered the store, another individual's foot was momentarily caught under the edge of the entrance mat nearest to the sliding doors. He kept walking and did not fall. He entered near the right side of the mat where the ripples are visible. Between that man's entrance and Emory's entrance, almost sixty individuals traversed the mat without incident.

When Emory entered the store, she saw the mat and did not notice any ripples, folds, or abnormalities. Her vision was unobstructed. She was not distracted. She

2

testified that if she had noticed a ripple on the day she fell, she would have stepped over it.  She had entered the Carpentersville Menards many times without incident and had never seen or heard about other customers tripping on the rug.

Emory stepped on the edge of the rug closest to the door with her right foot.  She entered near the center-left of the mat, a few feet to the left of the position of the man whose foot was caught under the mat ten minutes before.  She took another step with her left foot, which landed just under the edge of the rug.[1]  She then fell face-forward onto the rug.  Emory sustained injuries as a result of her fall.

Front-End Manager Guillermina Plazola assisted Emory after her fall.  Plazola did not observe any defects in the rug at that time.  Her duties as Front-End Manager included patrolling the front end of the store to address issues, which she did as part of a regular shift, and she had not observed any problems with the rug earlier that morning.  According to Plazola, this was the first time a customer had tripped or fallen at the entrance rug in her three-and-a-half years as Front-End Manager.  Other employees were also instructed to address any hazards they saw in the store.

Menards had a relevant store policy, entitled Entrance Mats, Shop Towels and

---

[1]  In its reply, Menards identifies five facts in its Local Rule 56 statement that Emory disputes, including a contention that Emory's "left foot caught the front left edge of the rug."  Def.'s L.R. 56.1 Stmt. ¶ 10.  Emory does not cite to the record to support her dispute.  Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 10.  Menards correctly argues that Emory failed to comply with Local Rule 56.1(e)(3).  *See* N.D. Ill. L.R. 56.1(e)(3).  The Court considers Emory to have admitted this fact, especially because there is video evidence to support Menards' asserted fact.  The Court also rules that Emory was not distracted when she fell, even though she disputes this fact in her Local Rule 56 response.  *See* Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 14.  Emory testified during her deposition that she was not distracted when she entered the store, so her effort to contend that she was distracted fails.  *See* Dkt. 32, Ex. 2, Dep. of Shirley Emory at 36:19–22.  The remainder of the contested facts are immaterial to this motion.

Dust Mops – Policy and Procedure Number 7.  This policy stated that walk-off grates should not be covered by entrance mats.  Dkt. 32, Ex. 1, Dep. of Guillermina Plazola at 22:14–15.  Plazola was not familiar with this policy before her deposition but acknowledged that on the date of Emory's fall, the rug's placement atop the grate violated the policy.  *Id.*, 23:6–8.

Emory filed the present suit in state court in Kane County in March 2025.  In April 2025, Menards timely removed the case to federal court.  Menards moved for summary judgment in late February 2026.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if, after drawing all reasonable inferences from the record in favor of the nonmoving party, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of establishing that there is no genuine dispute regarding a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met this burden, the party that bears the ultimate burden of persuasion at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial."  *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  If the party with the burden of persuasion cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate.  *Celotex*, 477 U.S. at 323–24.

4

Illinois tort law governs this diversity case. *LoBianco v. Bonefish Grill, LLC*, 94 F.4th 675, 677 (7th Cir. 2024). Under Illinois law, an ordinary negligence claim "requires proof of (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately caused by the breach." *Martin v. City of Chicago*, 2023 IL App (1st) 221116, ¶ 22, 229 N.E.3d 986, 991. The Illinois Supreme Court has also recognized that a landowner may be liable for injuries caused by a dangerous condition on the land based on the rules of premises liability. *Id.* ¶ 21, 229 N.E.3d at 991 (citing *Genaust v. Ill. Power Co.*, 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472 (1976)). To establish a claim based on premises liability, a plaintiff must prove the three elements of ordinary negligence plus three more: (4) there was a condition on the defendant's property that presented an unreasonable risk of harm, (5) the defendant knew or should have known of the condition and the risk, and (6) the defendant reasonably could have anticipated that others on the premises would fail to discover, recognize, or protect themselves from the danger. *Id.* ¶ 22, 229 N.E.3d at 991; *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

Whether a plaintiff's claim sounds in premises liability—and therefore must satisfy the three additional elements—depends on what the plaintiff alleges caused the injury. "If it is a landowner's *conduct or activity* that creates the injury-causing hazard, the claim is one of ordinary negligence rather than premises liability." *Martin*, 2023 IL App (1st) 221116, ¶ 23, 229 N.E.3d at 991. But "if it is a dangerous *condition* on the property that creates the injury-causing hazard, the claim is one of premises liability rather than ordinary negligence." *Id.* ¶ 24, 229 N.E.3d at 992. The plaintiff, as master of the complaint, can elect to proceed under either theory, so long as the allegations

5

and evidence support it. *Id.* ¶ 28, 229 N.E.3d at 993–94; *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 717–18, 700 N.E.2d 212, 215 (1998) (reading plaintiff's complaint as including both premises liability and negligence causes of action).

Menards read Emory's complaint to invoke both negligence and premises liability theories, and Emory defended both theories in her response. Without ruling on whether Emory's complaint raises both theories, the Court addresses each in turn.

## A. Premises Liability

To prevail at summary judgment on a theory of premises liability, Emory must show that a reasonable jury could find that Menards knew or should have known of the allegedly dangerous condition on its property. *Martin*, 2023 IL App (1st) 221116, ¶ 22, 229 N.E.3d at 991.

A corporation has actual notice of a dangerous condition if one of its employees actually knew of the dangerous condition. *See Nowakowski v. Menard, Inc.*, No. 22 C 3947, 2024 WL 916266, at *3 (N.D. Ill. Mar. 4, 2024). Menards argues that it lacked actual notice of any dangerous condition at the entry of the Carpentersville Menards. In her response, Emory did not address actual notice in any form. She has therefore waived (or forfeited) this point. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017) ("Failure to respond to an argument generally results in waiver[.]").

Even if Emory had not waived or forfeited this argument, there is no evidence in the record giving rise to a genuine factual dispute regarding actual notice. Emory identifies no employee of Menards who was aware of defects in the rug, including Plazola, the employee responsible for monitoring the entrance throughout her shift. Nor does Emory point to any complaints from customers to employees about the rug. *See*

*Porges v. Wal-Mart Stores, Inc.*, No. 09 C 3705, 2011 WL 939922, at *7 (N.D. Ill. Mar. 15, 2011) (holding that plaintiff failed to establish actual notice as she presented no evidence of prior complaints to employees or employee knowledge of a hazard).

Constructive notice can be established "by either presenting evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 651 (7th Cir. 2014); *Cruz v. Costco Wholesale Corp.*, 134 F.4th 984, 987 (7th Cir. 2025) (noting "two paths" to establishing constructive notice). "[O]f critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481–82 (7th Cir. 2008) (quoting *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007)). That length of time is determined based on the "circumstances of the particular case[.]" *Id.* at 483. Retail stores have "no duty of continuous inspection" of their aisles or floors. *Peterson v. Wal–Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001).

It is not clear exactly how long the rug was buckled or wrinkled. "Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice." *Reid*, 545 F.3d at 482. Emory fails to present evidence showing how long the rug was in its allegedly hazardous condition, and "[t]his is fatal to [her] argument that Defendant had constructive notice." *Nowakowski*, 2024 WL 916266, at *4. "Without evidence that the wrinkle in the rug was present for sufficient time to allow a [] Menards employee to notice it, Plaintiff cannot prove

7

constructive notice." *Id.*

The surveillance footage begins ten minutes prior to Emory's fall and shows that the rug contained buckles or wrinkles throughout that time. Fifty-eight customers entered before Emory, and none of those customers sustained injuries. One customer stumbled, but Emory does not allege that he told a Menards employee or that a Menards employee witnessed his entry. Under these circumstances, no reasonable jury could find that Menards was on constructive notice of a defect in the rug.

The same reasoning applies even if the Court assumes—despite the lack of supporting evidence in the record—that the rug was wrinkled throughout the morning of December 30, a busy holiday shopping day. It is likely that hundreds of customers stepped on the rug in the five hours the store was open prior to Emory's fall. *See Reid*, 545 F.3d at 483 ("[T]here is no bright-line rule indicating the requisite time to establish notice, though periods in excess of ten minutes have failed the test."). There have been no reports of other accidents, and although another customer's foot was briefly caught under the mat, he did not fall and was not injured. No reasonable jury could find that Menards should have discovered a defect in the exercise of ordinary care when so many customers entered the store without issue.

Emory's primary argument is that the defect should have been discovered because the rug was placed atop part of the walk-off grate in violation of Menards' policy. Emory contends that Menards failed to train Plazola on this policy and therefore is responsible for her failure to notice the defect in the rug as she inspected the front of the store.

Violation of an internal policy does not demonstrate constructive notice for

purposes of tort liability. The record shows that the Carpentersville Menards took various safety precautions, including having the Front-End Manager regularly patrol the entrance for hazards and training employees to address hazards identified in the course of their duties. *See Kozyra v. Dollar Tree Stores, Inc.*, No. 15 C 8605, 2017 WL 2958103, at *8 (N.D. Ill. July 11, 2017) (holding that constructive notice was not demonstrated by violation of an internal policy where the defendant's employees held monthly safety meetings, conducted pre-shift inspections, and surveyed store frequently on day of accident).

Additionally, there is no evidence in the record that "the dangerous condition was part of a pattern of conduct or a recurring incident." *Zuppardi*, 770 F.3d at 651. There were no previous accidents related to the rug during Plazola's three-and-a-half years as Front-End Manager, and Emory has not identified any other customers who suffered injuries relating to the rug. None of the dozens of people who entered the store on the same morning as Emory were injured by the rug. And the rugs were replaced as-needed or at a minimum weekly, reducing the likelihood of a rug in disrepair. No reasonable jury could find that there was a pattern of injuries sufficient to establish constructive notice.

Because Emory has not shown a genuine dispute of material fact on the issues of actual or constructive notice, her premises liability theory cannot survive summary judgment.

## B. Negligence

"[A] plaintiff does not need to prove actual or constructive notice when she can show the substance was placed on the premises through the defendant's negligence."

*Reed,* 298 Ill. App. 3d at 715, 700 N.E.2d at 214.  As noted above, ordinary negligence under Illinois law "requires proof of (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately caused by the breach."  *Martin*, 2023 IL App (1st) 221116, ¶ 22, 229 N.E.3d at 991.

"The mere use of a floor covering on which an invitee falls is not evidence of negligence."  *Brett v. F. W. Woolworth Co.*, 8 Ill. App. 3d 334, 336–37, 290 N.E.2d 712, 713 (1972) (affirming judgment notwithstanding verdict for defendant on a negligence claim of a seventy-one-year-old who tripped on a rug); *Johnson v. United States*, No. 98 C 2572, 1999 WL 446694, at *3 (N.D. Ill. June 23, 1999) ("On its face, it is not negligent to place a mat on the floor.").  This is true when, as in this case, a mat is used in inclement weather to allow customers to dry their shoes when entering an establishment.  But a negligent placement claim may lie when a mat was placed on the floor in poor condition or in a negligent manner.  For example, in *Wind v. HyVee Food Stores, Inc.,* 272 Ill. App. 3d 149, 650 N.E.2d 258 (1995), the court explained that a jury could find that floor mats were negligently placed because they were not taped down on the day of the accident, as was the usual practice, and the mats had torn and curled rubber edges.  *Id.* at 156, 650 N.E.2d at 263.

Emory has not presented evidence that would permit a reasonable jury to find that the mat was placed on the floor in a negligent manner or in poor condition on the day of the accident.  She makes no assertions relating to the condition of the rug or the way was placed on the floor.  *See Caburnay v. Norwegian Am. Hosp.*, 2011 IL App (1st) 101740 ¶¶ 48–50, 963 N.E.2d 1021, 1032 (finding a genuine dispute of material fact regarding negligent placement based on expert testimony that a floor mat was unsafe

10

without tape securing it and deposition testimony that the mat regularly buckled and had previously been taped down). "There is no specific act of alleged wrongdoing or unreasonable behavior, leaving it unclear how the Defendant breached their duty." *Gentry v. Shop "n Save Warehouse Foods, Inc.*, 708 F. Supp. 2d 733, 738 (C.D. Ill. 2010). It is conceivable that the rug became buckled or wrinkled through negligent placement, but it is also possible that the wrinkling occurred at some point during the five hours between when the store opened and when Emory fell, as hundreds of customers entered the store. "[I]t is insufficient to merely show that this type of floor mat becomes rumpled after customers walk on it." *Johnson*, 1999 WL 446694, at *4.

Emory has also failed to show a genuine dispute about the cause of her fall. "Illinois slip-and-fall plaintiffs can survive summary judgment when they 'repeatedly and conclusively indicate[ ]' what caused them to fall." *LoBianco*, 94 F.4th at 677–78 (quoting *Caburnay*, 2011 IL App (1st) 101740 ¶¶ 33–34, 963 N.E.2d at 1028–29 (reversing grant of summary judgment to defendant because the plaintiff "repeatedly and conclusively indicated that" he felt his foot catch in a fold or bump in the carpet)). "[A] plaintiff cannot offer only conjecture . . . [connecting] a slip hazard and injury and advance past summary judgment." *LoBianco*, 94 F.4th at 678.

Emory's claim stands on conjecture in this regard. She did not see a wrinkle in the rug before her fall or feel an abnormality under her foot. And the video does not show a buckle in the portion of the rug where she stepped, although it is conceivable that there was a fold that is not visible on camera. "[E]ven if she tripped over a ripple, there is no evidence that the putative ripple was related to any negligence of the Defendant." *Gentry*, 708 F. Supp. 2d at 739. "By her own admission she did not see or

11

feel what caused the fall. The evidence that her body, after the fall, was in close proximity to the alleged [wrinkle] is too ambiguous an inference upon which to predicate a causal connection." *Brett*, 8 Ill. App. 3d at 337, 290 N.E.2d at 714. Here, unlike in *Brett*, Emory fell on a rug that, based on the evidence, had a ripple in a different area from where she tripped and fell. There is no evidence that she fell near any defect in the rug.

Nor is the violation of the Menards policy that prohibited placing mats atop walk-on grates sufficient to permit a jury to find negligence, as Emory contends. *See Doe v. Coe,* 2019 IL 123521 ¶ 36, 135 N.E.3d 1, 12 ("[W]here the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines.") (quoting *Rhodes v. Ill. Cent. Gulf R.R.*, 172 Ill. 2d 213, 238, 665 N.E.2d 1260, 1272 (1996) (collecting cases)); *Johnson*, 1999 WL 446694, at *3 (noting that a manual stating that mat edges should be taped down if they curl was not evidence of negligent placement).

For all of these reasons, Emory has failed to show a genuine dispute on her negligent placement theory.

Because Menards has demonstrated a lack of a genuine dispute on both of Emory's theories, the Court need not address Menards' additional arguments regarding duty and whether the rug constituted a condition presenting an unreasonable risk of harm.

## Conclusion

For the reasons stated above, the Court grants Menards' motion for summary judgment [dkt. 25]. The Court directs the Clerk to enter judgment stating: Judgment is entered in favor of the defendant and against the plaintiff. The telephonic status hearing

12

on June 30, 2025 at 9:00 a.m. is vacated.

_____

MATTHEW F. KENNELLY
United States District Judge

Date:  June 25, 2026