**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHIRLEY EMORY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 4300** |
| | ) | |
| **MENARD, INC., d/b/a MENARDS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Shirley Emory sued the defendant Menard, Inc. (commonly known as Menards) in March 2025 in the Circuit Court of Kane County, Illinois over an accident that occurred at one of Menard's retail stores. Menard removed the case to federal court in April 2025. The Court granted summary judgment in favor of Menard in June 2026.

On July 23, 2026, Emory moved to vacate the summary judgment and remand the case to the Circuit Court of Kane County. She argues that the Court never had subject matter jurisdiction over the case. For the reasons stated below, the Court denies Emory's motion.

### Background

Menard is a Wisconsin corporation with its principal place of business in Eau Claire, Wisconsin. Def.'s Notice of Removal ¶15. *See* 28 U.S.C. § 1332(c)(1) (For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."). Emory is domiciled in and is a citizen of Illinois. *Id.* ¶¶9–

13.

On December 30, 2023, Emory, who was eighty-three years old, entered a Menards retail store in Carpentersville, Illinois. As Emory entered the store, she tripped and fell face-forward onto a rug that had been placed just inside the front entrance. Emory sustained injuries as a result of her fall.[1] Emory sued Menard in March 2025 in the Circuit Court of Kane County, Illinois for breach of its duty of care. Menard removed the case to federal court in April 2025 and moved for summary judgment in February 2026. The Court granted summary judgment in favor of Menard in June 2026. *Emory v. Menard*, No. 25 C 4300 (N.D. Ill. June 25, 2026). Emory filed this motion to vacate and remand on July 23, 2026. She asks the Court to vacate the summary judgment and remand the case to the Circuit Court of Kane County for lack of subject matter jurisdiction, contending that the required amount in controversy for diversity jurisdiction purposes was lacking from the outset.

## Discussion

Under Federal Rule of Civil Procedure 60(b), relief from a judgment or order is appropriate when the judgment is void. Fed. R. Civ. P. 60(b)(4). "A judgment is void within the meaning of Rule 60(b)(4) where it is entered by the court without jurisdiction . . . ." *Fed. Election Comm'n v. Al Salvi for Senate Comm.*, 205 F.3d 1015, 1019 (7th Cir. 2000). Emory contends that the summary judgment is void because the Court lacks subject matter jurisdiction.

"Except as otherwise expressly provided by an Act of Congress, any civil action

[1] The Court's opinion granting summary judgment provides a more detailed overview of the facts. *See Emory v. Menard*, No. 25 C 4300, at *1–4 (N.D. Ill. June 25, 2026).

brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court has original jurisdiction over civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.[2] 28 U.S.C. § 1332(a)(1). The party seeking removal bears the burden of establishing federal jurisdiction. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510 (7th Cir. 2006).

**A. Amount in controversy**

"The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins or in the event of removal, on the day the suit was removed." *Oshana*, 472 F.3d at 510–11 (citations omitted). As a preliminary matter, Emory cites the incorrect legal test for the amount in controversy in her motion to vacate and remand. The correct test is as follows: the defendant "has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Id.* at 511. Once the defendant has established the requisite amount in controversy, "the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* at 511 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

Emory contends that "a plaintiff's good-faith allegation of the amount of the controversy generally controls" unless it is shown to a legal certainty that the amount in controversy requirement is not met. Pl.'s Mot. to Vacate and Remand 3. Emory

[2] Emory appears to concede that the parties are completely diverse.

misstates the law. A removing defendant bears the burden of "showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement [was] met," but the defendant need not show to a legal certainty that the plaintiff's claim is worth more than the jurisdictional minimum to carry its burden. *See Oshana*, 472 F.3d at 511. But even though Emory has misstated the law, the Court has an independent obligation to cure jurisdictional defects. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *United States v. Cotton*, 535 U.S. 625, 630 (2002). Thus the Court considers Emory's jurisdictional arguments under applicable law.

**1. Emory's prayer for relief**

Emory's complaint requests damages in "an amount exceeding $10,000 but not exceeding $50,000, plus costs of suit." Compl. at 2–3 (cleaned up). Emory argues that the language in her prayer for relief expressly limits the amount in controversy in this case to $50,000. Pl.'s Mot. to Vacate and Remand at 3–4.

A plaintiff may submit a binding disclaimer of damages above the jurisdictional minimum to prevent removal, so long as it does so before the case is removed. *Oshana*, 472 F.3d at 511. The language in Emory's prayer for relief, however, is not a binding disclaimer of damages. "The court applies state law to determine whether more than $75,000 is in controversy." *Sykes v. Cook Inc.*, 72 F.4th 915, 207 (7th Cir. 2023). Specifically, it is clear that Illinois law does not limit a plaintiff's possible recovery to the amount of damages stated in its complaint. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002) (collecting cases). Accordingly, a plaintiff in the Seventh Circuit who seeks to conclusively limit the amount in controversy must *stipulate* to

damages not exceeding $75,000. *Id.* at 552; *Oshana*, 472 F.3d at 511. Merely stating in the complaint that the plaintiff seeks damages less than the jurisdictional amount is not sufficient to prevent removal. *See, e.g.*, *Priori v. Petco Animal Supply Stores, Inc.*, No. 14 C 3264, 2015 WL 13654021 at *1 (N.D. Ill. Jan. 20, 2015) (holding that a plaintiff's claim for damages "in an amount in excess of $50,000 but not in excess of $75,000" was not a binding limitation on the amount of plaintiff's recovery and therefore did not conclusively limit the amount in controversy).

Because Illinois law does not limit Emory's recovery to the amount of damages claimed in her prayer for relief, that allegation does not conclusively determine the amount in controversy in this case.

**2. Facts suggesting that the amount in controversy was met**

The fact that Emory's complaint did not include a binding disclaimer of damages above the jurisdictional minimum is not fatal to her challenge. *See Sykes*, 72 F.4th at 207 ("Contractual or statutory caps on damages and statutory prohibitions on recovering certain categories of damages may limit the amount in controversy, but legal certainty does not require the existence of a precise, quantifiable limitation on recovery.") (quotations and citations omitted). As the proponent of federal jurisdiction, Menard has the burden of "showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement [was] met" when the case was removed. *Oshana*, 472 F.3d at 511. A defendant may struggle to carry its burden in a removal case "when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims." *Id*. Thus a removing defendant may satisfy its burden by providing a good-faith estimate of the stakes, so long as the estimate is plausible and supported by a preponderance of the evidence.

*Id.* If a defendant does not lay out an estimate of the damages at issue, "the Court can apply reason and common sense to the Complaint to determine the amount in controversy." *Majchrzak by and through Majchrzak v. Gap, Inc.*, No. 17 C 6604, 2018 WL 2220292 at *4 (N.D. Ill. May 15, 2018).

When assessing the amount in controversy, the Court "may consider the full record, including the pleadings and any attachments, as well as evidence produced in discovery." *Sykes*, 72 F.4th at 206. However, "[e]vents occurring after the filing date are relevant only if they clarify what the plaintiff was actually seeking when the case was [filed or] removed." *Id.* (alteration in original) (quotations and citations omitted). By the same token, plaintiffs cannot rely on post-removal assertions that their claim was worth less than $75,000 to defeat jurisdiction. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 292 ("[T]hough, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."); *Majchrzak*, 2018 WL 2220292 at *4 (collecting cases). To establish facts sufficient to suggest that the amount in controversy requirement is met, a defendant may rely on allegations in the complaint pertaining to claimed damages, including the nature and severity of injuries, pain and suffering, medical expenses, and disabilities suffered. *See, e.g.*, *Andrews v. E.I Du Pont De Nemours and Co.*, 447 F.3d 510, 515 (7th Cir. 2006); *Majchrzak*, 2018 WL 2220292 at *4.

*Majchrzak* involved a motion to remand to state court a personal injury claim based on a contention that the amount in controversy requirement had not been met. *Majchrzak*, 2018 WL 2220292 at *1. The state-court complaint contained allegations

that the plaintiff had "tripped and [fallen] over the leg of a clothing rack [at one of the defendant's retail stores] and struck the edge and/or corner of a wall with his head . . . ." *Id.* The complaint contained additional allegations that the incident had caused the plaintiff to suffer "severe and permanent injuries," incur "substantial medical, hospital and therapy bills, "experience untold suffering," and be "deprived of the ability and capacity to attend most social and personal activities." *Id.* at *2. The plaintiff later alleged in his motion to remand that he had suffered only minor injuries. *See id.* at *3–4. The court determined that the plaintiff's attempt to limit the scope of his injuries via his motion to remand was a post-removal assertion and held that the defendant had "satisfied [its] burden and shown the amount in controversy by a preponderance of the evidence simply by quoting the unspecified serious injuries and broad damages of the Complaint." *Id.*

Like the defendants in *Majchrzak*, Menard has carried its burden. In her complaint, Emory alleged that her injuries were severe and permanent and that she had expended and would incur large expenditures for medical care but otherwise provided no specifics about her injuries. *See* Compl. ¶8 ("Plaintiff sustained severe and permanent injuries both externally and internally, and was and will be hindered and prevented from attending to her usual duties and affairs . . . . Plaintiff further expended and became liable for and will expend and become liable for large sums of money for medical care . . . ."). Though Emory now states in her motion to vacate and remand that she "suffered only a minor facial laceration and some residual bruising" and that "[h]er only medical treatment in connection with the injury was being transported to the hospital for evaluation," the allegations in her complaint suggested injuries much more

severe; she did nothing in her complaint to specify her injuries or limit her damages in a way that was binding. *Compare* Pl.'s Mot. to Vacate and Remand at 5 *with* Compl. ¶8. Emory's attempt to limit the scope of her injuries now amounts to a post-removal assertion that does not, for jurisdictional purposes, undercut the allegations in her complaint or establish what she was actually seeking when Menard removed the case. As a matter of common sense, now that she has lost the case on summary judgment, Emory has an obvious incentive to limit the value of her claim in a way that she was not when she drafted the complaint in the first instance. Accordingly, the Court relies on Emory's injuries as she described them in her complaint.

Menard has shown by a preponderance of the evidence that the amount in controversy requirement was satisfied at the time of removal. *See* Def.'s Notice of Removal ¶¶22–24. Emory's own allegations that she "sustained severe and permanent injuries both externally and internally"; "was and will be hindered and prevented from attending to her usual duties and affairs" and "has lost and will in the future lose the value of that time"; has "suffered great pain and anguish both in mind and body"; and has "expended and became liable for and will expend and become liable for large sums of money for medical care and services as a result of [her] injuries" made it more likely than not that the amount in controversy exceeded $75,000. Compl. ¶8. It is eminently reasonable to infer that future medical expenses for an elderly woman's trip and fall causing "severe and permanent" internal and external injuries, combined with the "great pain and anguish both in mind and body" that Emory alleged, would total more than $75,000. "[C]ourts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint

that the plaintiffs' damages exceeded the jurisdictional amount . . . ." *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002).

**3. The legal certainty test**

Because Menard has established the requisite amount in controversy by a preponderance of the evidence, Emory can defeat jurisdiction "only if it appears to a legal certainty that the claim [was] really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 511; *see also Sykes*, 72 F.4th at 207 ("If the court determines that, as a matter of state damages law, it would be impossible to recover more than $75,000 based on the plaintiff's alleged injuries at the time of filing or removal, then the court lacks jurisdiction.") (citations omitted). Emory's burden is a substantial one. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011) (The legal certainty test "sets the bar high for excluding federal subject-matter jurisdiction.").

Emory argues that it is a legal certainty that she could not have recovered more than $75,000 in this case because her complaint expressly sought damages not exceeding $50,000. *See* Pl.'s Mot. to Vacate and Remand at 4. As explained above, Illinois damages law does not limit a plaintiff's recovery to the amount of damages claimed in the complaint. Thus the wording Emory used in her complaint does not establish to a legal certainty that she could not recover more than $75,000. Emory further argues that "the injuries [she sustained] make recovery of over $75,000 a legal impossibility." Pl.'s Mot. to Vacate and Remand at 5. But as discussed above, Emory's attempt now, in her motion to vacate and remand to limit her injuries to "a minor facial laceration and some residual bruising," diverges from the allegations of "severe and permanent" injuries in her complaint, and the allegations in her complaint control.

*Compare id. with* Compl. ¶8. Emory may not rely on this post-removal assertion to deprive the Court of jurisdiction.

**D. The timing of Emory's jurisdictional challenge**

A challenge to subject matter jurisdiction may, of course, be raised at any time. *Grupo Dataflus v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 571 (2004); *BEM I, L.L.C.*, 301 F.3d at 551. The Seventh Circuit has cautioned, however, that it is "improper, indeed sanctionable, and quite possibly unethical" to deliberately withhold a challenge to subject matter jurisdiction. *BEM I, L.L.C.*, 301 F.3d at 551 (citations omitted). Lawyers who practice in federal court have an obligation to "assist the judges to keep within the boundaries fixed by the Constitution and Congress" as well as a duty not to subject the judge and opposing lawyer to the burdens of a lawsuit they know or think may eventually have to be started anew in another court because of a jurisdictional defect. *Id.* Of course, "jurisdictional problems may be overlooked in all innocence." *Id.*

*BEM I* and *Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011), are the guiding authorities on this issue in the Seventh Circuit. In *BEM I*, a plaintiff filed a motion in state court to increase its damages claim above the jurisdictional amount but withdrew its motion immediately upon discovering that the defendant intended to remove the case to federal court. *BEM I*, 301 F.3d at 551. Following removal, the plaintiff did not challenge the amount in controversy until after the district judge had raised the issue on her own initiative, twenty-one months after the case was removed. *Id.* at 552. Plaintiff's counsel later admitted that he had withdrawn his motion in order to prevent removal. *Id.* *Enbridge Pipelines* involved twenty-five related cases filed in federal court by a single plaintiff against twenty-five different

defendants. *Enbridge Pipelines*, 633 F.3d at 604. The plaintiff was awarded summary judgment in each of the federal cases, and eighteen of the original defendants brought a consolidated appeal. *Id.* On appeal, the Seventh Circuit noted that some of the defendants had waited until after summary judgment to challenge the amount in controversy and cautioned that "a defendant who lies back, holding [a jurisdictional] challenge in reserve because he hopes to obtain a judgment on the merits . . . engages in misconduct for which he can be disciplined." *Id.* at 606 (collecting cases).

In this case, Emory challenged the Court's jurisdiction only after it had entered an adverse judgment against her. On the face of things, this could suggest that Emory held her jurisdictional challenge in reserve as her case was pending in federal court and decided to assert it only once, and because, an adverse judgment had been entered.

Jurisdictional defects, however, may be innocently overlooked. The circumstances that suggested bad faith in *BEM I* and *Enbridge Pipelines* are not present in this case. In *BEM I,* the plaintiff attempted to limit the amount in controversy with the sole purpose of preventing removal and admitted that he had been aware of the jurisdictional defect before the case was removed to federal court. *BEM I*, 301 F.3d at 551–52. In *Enbridge Pipelines*, the court had good reason to think that the defendants who challenged the amount in controversy only after losing in district court had prior notice of the jurisdictional defect because most of the twenty-five original defendants had already challenged the amount in controversy in district court. *See Enbridge Pipelines*, 633 F.3d at 605.

In this case, Emory's lawyer stated at oral argument that he claimed damages "exceeding $10,000 but not exceeding $50,000" simply to address the state court's local

rules for case assignment, rather than to prevent removal.[3] The lawyer's explanation is plausible. Illinois law provides that "[i]n a personal injury action, a party may not claim an amount of money unless necessary to comply with the circuit court rules about where a case is assigned." 735 ILCS 5/2-604.2(a). Although the current version of Kane County Circuit Court Local Rule 11.01(c) provides that "[a]ll civil actions exclusively for money in an amount not exceeding $75,000 exclusive of interest and costs shall be subject to mandatory arbitration," an earlier version of the rule applied to "civil actions exclusively for money in an amount exceeding $10,000 but not exceeding $50,000." *Compare* Ill. Cir. Ct. Kane Cnty. Loc. R. 11.01(c) (2022) *with* Ill. Cir. Ct. Kane Cnty. Loc. R. 11.01(c) (2017). Emory's lawyer also stated at oral argument that he had very little experience practicing in federal court and contended that he raised the amount in controversy issue once he realized that Emory's claim might fall below the jurisdictional threshold, which he said did not happen until after the Court had entered summary judgment and counsel were taking a closer look at things. Some of this, honestly, is a bit hard to swallow. The $75,000 jurisdictional threshold is taught in every law school's civil procedure class, and Emory's counsel had to have seen the express statement in Menard's notice of removal that the amount in controversy was over $75,000. One would think that any self-respecting plaintiff's personal injury lawyer, having consulted with his client before filing suit, would have had a pretty good idea right then if the threshold was not met or even if it was a close call. The Court is,

[3] Menard makes this argument in its own brief. *See* Def.'s Resp. to Pl.'s Mot. to Vacate and Remand 3–4 ("This language [stating that Emory sought a judgment exceeding $10,000 but not exceeding $50,000] merely reflects what Plaintiff believed she needed to include in her complaint to comply with Illinois rules for case assignment . . . .").

however, willing to give Emory's lawyer the benefit of the doubt on this point and does not find that the late raising of the jurisdictional issue amounts to gamesmanship. That does not change the fact, however, that the case met federal jurisdictional requirements at the time of removal.

**Conclusion**

For the foregoing reasons, the Court denies Emory's motion to vacate and remand [dkt. no. 45].

MATTHEW F. KENNELLY
United States District Judge

Date: August 26, 2026